All right, Mr. Goad is it? Mr. Goad? Yes, Your Honor. Pleasure to hear from you. Thank you. May it please the court, I am Joshua Goad for the appellant James Wright. First, I need to acknowledge that I've badly botched a case citation on page 10 of the reply brief, which is a mistake I discovered last night. I incorrectly cited to a Supreme Court opinion that overturned the opinion that I intended to cite to and what I actually cited to was the dissent in this circuit's opinion. But the legal principle still stands, which is that court's opinions should be read as a whole. And I'm sorry about that and embarrassed. But now on to the merits. The The question is whether any reasonable officer in the situation that Deputy Wright faced could have believed that the force he used was justified. And if not, whether even one reasonable officer could think that existing precedent did not put the legality of the actions beyond debate. Mr. Barrick's claims survive only if the answer to both questions is no. Now the district court found facts in the life most favorable to Barrick's that should have led to the legal determination that Deputy Wright was entitled to qualified immunity. The district court said, while Barrick's certainly posed some threat, it is unclear whether the threat warranted the amount of force used during the between Wright and Barrick's. And that's on JA 539. Now again, the district court was reviewing these facts in the light most favorable to Barrick's and still found that there was a certain threat. Now that statement that made by the district court was in the context of discussing the second Graham versus Connor factor, which is immediate threat perceived by the reasonable officer in its circumstance. Objective reasonableness is a pure legal question of law based on the factual finding of whether there was an immediate threat among other things. Well, does the quantum of the threat make a difference? It does, Your Honor, and in some cases the degree of threat puts it beyond debate one way or the other. Here, it means it uncertain according to the district court. And because it is uncertain to the district court, it would also be uncertain to an officer in that circumstance. And uncertainty is where qualified immunity makes a difference. You say it was a serious threat. Is it really a serious threat when someone has a simply using a skateboard without a reflective light? Is that a serious threat? Well, that Your Honor goes to the first of the Graham factors, which is the seriousness of the offense at issue. The threat. Okay, well the seriousness of the offense. Is that a serious offense? It is not a serious offense and the district court so found. But that cuts against you, does it not? It does cut against us, yes. But the threat assessed under the Graham factors is the most important of the factors. And here, the district court found that that question was mixed. Let me ask you something. Let me ask you. The core and critical is when they're in the back room there and the plaintiff is kneeling with his hands up and then there's a scuttle. And after that, it's very hard to tell what happened. But apparently, and there's a dispute about what happened, but apparently there were 12 hits of some kind against the defendant. And we have fractures and brain damage and bleeding, which are not just glancing hits or a shot with a slap to the side of the hand. There's something going on. And maybe his head was slammed or maybe there wasn't an open hand or whatever. But those blows just continued for quite a while according to one version of the facts. According to the officer, he was just trying to take the man down and to help him. But it seems to me that if a jury were to look at that, could it not conclude that maybe those hits were gratuitous and excessive? The jury could make that decision, Your Honor. But here, the inquiry is as a matter of law, could some reasonable officer find that they were not excessive? Well, I understand. But if a jury could find it was excessive, it seems to me then we're facing the situation where maybe the immunity must be determined as it must be resolved as a question of fact. As you know, the Johnson case basically said we don't have jurisdiction when the factual question determines the immunity. As a matter of law, if we can accept a set of facts and say under that set of facts, the officers are entitled to immunity. But the biggest problem in getting your hands around this case is what set of facts are we going to rely on if one set of facts would suggest immunity and another set of facts would not? Well, Your Honor, in the context of making that statement, the district court was viewing the facts in the light most favorable to Barracks. And still... Go back. Wait a minute. In the context of making what statement? Sorry. The statement that Barracks certainly posed some threat to Wright and that then rendered the amount of force that Wright used uncertain as to whether that was justified. You know, I think that Judge Niemeyer made a very salient point here. And after all, we're dealing with an excessive force claim. And when somebody is repeatedly slamming an individual's head against the floor and punching him 12 times about the neck and face, and, you know, he's left with facial lacerations and a fractured jaw and cerebral hemorrhage, blood in his sinuses and bruising on his face and knees and everything. I mean, shouldn't a jury be taking a look at that? And in addition, you have a situation where the plaintiff may well have surrendered before the force was even applied. We don't know that either. The jury could take a look at that. But I mean, if we kept this from a jury and said, well, there's qualified immunity here, it would just be tantamount to saying, well, police can do whatever they want. They can just beat up somebody at will. And that, you know, that just goes way, way too far. And as I said, there's another question here as to whether this happened because there was a history of bad blood between this officer and this victim here. And I don't know what all of that is, but they obviously had had run-ins and there was some bad blood between them. And maybe the officer just decided, well, I'm just going to wait for the slightest infraction and take it out on this man. And, you know, that just to say, well, we're not qualified immunity, sweep it under the rug, that just doesn't work. The man may have surrendered his weapon. Or he may have surrendered, he may have thrown his hands up. I don't know. But there are too many factual questions here. And the evidence of the injury is very disturbing. And it's just, you know, sympathetic to qualified immunity. And I think it serves important purposes. But this could be, this could cause an excessive force claim under Graham v. Conner to live up to its name. I mean, this is just bad business. Or a jury could find it to be so. Well, two things, Your Honor. First is that the subjective intent, so the bad blood, if there was any, is irrelevant under qualified immunity. The subjective intent of the officer does not matter. It's only the objective facts. And secondly, the jury does not decide whether the officer acted with objective reasonableness. The jury determines the historical facts. But under Anderson v. Hutchinson, after the jury determines the historical facts, then the court makes the decision about whether the officer was objectively reasonable. And here, the question is, you know, I think you're absolutely right. And as you know, we have a lot of opinions that take things from the officer's eyes and treat and apply a objective test of what a reasonable officer would do in the circumstances. And regardless of what the plaintiff thought or what some other people thought, we give the officer a lot of benefit because he has to be found deliberately violating constitutional law in order to lose his immunity. But in this case, the question I have is in any arrest, any arrest, this man was on his knees with his hands up. I don't quite know what happened after that. But let's say any arrest where they're scrambling and hitting, if the officer starts slamming a, this is hypothetical now, starts slamming the defendant's head into the pavement and fractures his nose, his forehead, his chin, and everything else because he's resisting, it seems to me that might go beyond what a reasonable officer would find appropriate under the force necessary to make an arrest. And here we don't have any evidence of a gun. We don't have any evidence of flight. The man was basically surrendering. I'm wondering why the officer didn't say stand up, put your hands behind your back, and I'll put on cuffs. But he didn't. He went after him when he's on his knees. What bothers me is the objective evidence of the result of the force used in the arrest. These injuries were not minor. I mean, when you, when you break facial bones and cause internal bleeding, something's going on much more serious than just trying to arrest a man for a misdemeanor. And well, those are all factors that the district court considered. All factors that the district court identified in its statement of facts. And there was a discussion of a previous gun charge with the plaintiff here. There was a previous flight immediately before the force that was used. Well, there was a flight to the back room, but then they get, he get in the back room and the man does get on his knees with his hands up, doesn't he? Yes, your honor. Okay. To me, the critical point is from that point afterwards, we have a misdemeanor, a person who had, going down a skateboard, the officer wants to make an arrest and the guy's on his knees with his hands up. The officer doesn't interpret that and react to that. Rather, the officer goes after him physically. And the question is, that what happens thereafter is hard to determine. And of course, officers often have resistance in making arrests and you have to give them a lot of latitude because they're entitled to bring the person under control and handcuff them and so forth. But I can't figure that if we were to grant immunity, would we be saying it's okay to hit 12 times causing this type of injury when arresting a misdemeanant? The court would not be making that blanket statement. Well, that would be the law we would be affirming. In other words, we would say that is not excessive force. In this particular... As a matter of law. Yes, Your Honor. Yes, in this particular circumstance, that would be true. The district court had the advantage of being able to read the deposition testimony of both parties, viewing the several videos of the occurrence and still resolving all issues in favor of barracks, all factual disputes in favor of barracks. The district court still stated that barracks posed a threat and that threat made the whether rights force, whether it was justified, made it unclear. And if it is unclear to the court, then it is unclear to at least some reasonable officer. And it only takes one reasonable officer to find it unclear such that he may have made a mistake. But, you know, in almost every arrest situation, unless the defendant is essentially passed out, there's always going to be some theoretical threat of force or danger to the officer. And it seems difficult to me to say that recognizing that truism somehow changes the qualified immunity analysis. I see that I'm out of time, but I'm happy to answer this question. Yes, please. That is where the second of the Graham factors comes into play. This in this instance, the district court found that that second Graham factor was mixed in many cases, including all five of the cases that the court district court used as a comparator. The court found that that second Graham factor was strongly or was in favor of the plaintiff there where the plaintiff posed no threat to the officer in any of those cases. And that's why it's so distinguishable. That's why this case is so distinguishable from those, because the second Graham factor, which is the most important of them in all five of those, the arrestee, the person being arrested or the plaintiff in those cases, posed no threat to the officer. And often this court said that arrestee also posed no threat to anyone else. Do you contend that the resistance here was the threat or was there something else? I didn't understand him to be displaying a weapon or reaching for a weapon or a stick, or I understand from this case is basically just resistance, wasn't it? In this case, what he actually did was just resistance. But at the time, from the perspective of then Deputy Wright, he was in a room full of potential weapons. He had not been frisked. He had large pants on with deep pockets. And so had a potential weapon on his person, which he ended up, he did have a small knife on his person. And he was physically slightly larger than Deputy Wright. All of those were factors that the district court knew and considered and contributed to the district court's determination that Mr. Barracks was a threat to Deputy Wright. All right, we thank you. Mr. Barry, let's hear from you. Thank you, Your Honor. Good morning, and may it please the court. My name is Dave Barry and I represent the FLE, Joshua Barracks. I'd like to stress at the outset that the historical facts giving rise to this case are what remain in dispute. That is why the district court denied summary judgment, because it found the pretrial record is unclear about what happened between Mr. Barracks and Deputy Wright. Those historical facts, the who, what, where, and when of what happened, are jury questions. Those unanswered jury questions foreclosed this appeal for two reasons. The first is jurisdiction. The court should dismiss this appeal because it is premised on a factual narrative that contradicts the district court's assessment of what a reasonable jury could find based on the pretrial record. The second reason is on the merits. The court should affirm the decision below because the district court correctly held, clearly established law, has long prohibited police officers from body slamming and punching suspected misdemeanors in the head after they've surrendered. Either way, the outcome here is the same. This case should proceed to trial for a jury to resolve the historical facts of what happened. If we were to dismiss on the jurisdictional issue, why would we go any farther? I agree, Your Honor. I don't believe the court should. I think jurisdiction is dispositive. And with that, Your Honor, I'd like to focus first on jurisdiction. As far as jurisdiction goes, the threshold question in an interlocutory appeal based on qualified immunity is whether it presents a purely legal issue. This case does not. We know that because Deputy Wright does not argue he's entitled to qualified immunity, regardless of whether Mr. Barracks posed a threat. Instead, he argues he's entitled to qualified immunity because he claims Mr. Barracks posed an immediate threat. But whether Mr. Barracks posed an immediate threat, some threat, or little or no threat, those are all, those questions all hinge on disputed facts. And this court does not have interlocutory jurisdiction to revisit the district court's assessment of the pretrial record or its determination that there's a genuine dispute as to how much of a threat Barracks posed. That's on the same page where the court said that Barracks may have posed some threat, certainly posed some threat. Now, Deputy Wright tries to avoid the jurisdictional bar by claiming the district court found that Barracks posed a threat. But that's incorrect. What the district court found was that pretrial record mixed. And so it could not determine whether Deputy Wright's conduct was excessive under the second Graham factor until a jury resolves what the historical facts are, what happened. Those disputed historical facts include whether Mr. Barracks surrendered or pretended, whether Mr. Barracks lunged forward or was he body slammed, and whether Mr. Barracks resisted or reacted to the onslaught that followed. You know, if the district court identified those questions, those very things that you said, and it seems to me they were heavily in dispute, there's a real question of about three or four different things about flight, resistance, surrender, extent of the force, etc. Isn't that just about it? Doesn't that deprive us of jurisdiction under Johnson? And is there any need to talk about this further? I would agree. You're right, I believe it does. These disputed facts, they matter as a district court held. And this court doesn't have jurisdiction to revisit them at this stage of the case. We must take the case and facts as the district court gave them to us. So is there anything further you've identified, the district court identified, you've just been identifying about four disputed facts, which are relevant to the three prongs of the Graham test. And that's about it. I'm going to ask my co-panelists if they have any further questions from you. Judge Niemeyer, do you have any further questions? I'm fine. I'm fine, thank you. Judge Agee, are you okay? No questions. We have no questions. Thank you. Understood, Your Honor. Thank you. And we'd ask the court to dismiss the appeal. All right. Mr. Gold, if you have some response, that'd be fine, but be brief. You're on mute. All right. Sorry about that. The determination of whether the threat justified the force, that's a legal issue. The existence of the threat is a factual determination that the district court made. Well, let's assume there was a threat. The question is just what you said, what is the response to the threat? And it's hard for us to say as a matter of law, whether this response fell within the constitutional justification or not, because what followed is disputed. It's something that we can't resolve and the district court can't resolve on summary judgment. The district court could only decide what the facts were in deciding summary judgment if it takes the facts in favor of the defendant and finds disputes. It seems to me the officer could win that trial. He could find out that his response was sufficiently measured in response to the effort to arrest. I think every officer has a right to use some force, a measured force to make an arrest. We don't emphasize that enough, I don't think, but it's so. And this officer was trying to make an arrest, but I think it's also pretty clear that under certain factual circumstances that you can hypothesize an officer is not entitled to use that degree of force to effect arrest. And so this may all determine the risk, what the nature of the engagement was, the seriousness of the crime, the extent of resistance, and how the officer responded, and ultimately what the injury was, I suppose. But we would not be deciding anything factually. We wouldn't be resisting what you say one way or the other. It would just be a question of this is an interlocutory appeal. And if we have to resolve facts in order to determine whether the qualified immunity exists, I think Johnson has told us that interferes with the jury right. Well, Your Honor, according to the district court, the district court resolved all facts in favor of Barracks. And still resolving all facts in favor of Barracks, it was a close call as to whether the force that Wright used was justified. And because it's such a close call, qualified immunity applies, and Wright, in fact, is a civil suit for that force. That's what qualified immunity grants him. But we're reviewing the same record. We're reviewing the same record on appeal, the summary judgment. And so we review all the same stuff. And we may say that the dispute may be even more serious. And we can't determine from this record whether the force was excessive or was within constitutional limits. District court was not entitled to make findings of fact. It could only take facts to resolve whether there's a dispute. But it was handling summary judgment. And our review of a summary judgment is de novo. We review the same record. We look at the same video, the affidavits. It's all in the record. And I must say, I've told you what I thought the core issue was, is after he's on his knees with his hands up, what happened? And the officer is going to give his version. And if the jury buys it, he's going to have immunity or he's just going to win outright. But if he buys the defendant's version, it seems to me that the jury could conclude the force was excessive. But we don't, we can't, shouldn't be in the role of resolving that, should we? And my time is up, but I would like to answer this question. If I have permission. I agree. The district court viewed all disputes in favor of barracks, resolved all disputes in favor of barracks, and still found that there was a threat. Still found that the level of justification was in question. It didn't resolve any disputes in favor of barracks. He just said these are disputed issues of fact. But all facts were viewed in the light most favorable to barracks. And viewing it in that way, there was still a certain threat. That's not correct. The district court said these are questions that are in dispute. And it should go to a jury. That's all the district court said. He didn't resolve anything. She didn't resolve anything. But anyway, we've been through this. And I don't think we need to repeat what we've been through. Judge Niemeyer, do you have any further questions? I have no further questions. Judge Agee? No questions, Your Honor. All right. Thank you both. We appreciate it. We hope you have a very nice day. You too. Thank you, Your Honor. We will adjourn court and go into our conference.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee